## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES, | : | |
| Prosecution | : | |
| | : | Case No. 3:09-cr-281 (VLB) |
| v. | : | |
| | : | October 28, 2011 |
| VICTOR PEREZ, | : | |
| Defendant | : | |

### MEMORANDUM DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS DURING THE COURSE OF HIS ARREST

Before the Court is the June 24, 2011 motion by the Defendant Victor Perez seeking to suppress statements he made after having been arrested on December 17, 2009. In that memorandum, the defendant argues that he was not properly Mirandized before being interrogated. On June 29, 2011, the Government filed its preliminary opposition to the defendant's motion to suppress. The government responds that the defendant's statements were given voluntarily and that they followed explicit <u>Miranda</u> warnings. 384 U.S. 436 (1966).

The parties agree that on December 17, 2009 at approximately 6:00am, uniformed law enforcement officers knocked and announced their presence at Mr. Perez's residence located at 111 Murray Street in Meriden, Connecticut. At that time, the parties further agree that the defendant and his girlfriend, Christina Gosselin were awoken and that law enforcement officers were directed to the back of the home by an occupant where they gained access. The parties disagree as to whether Mr. Perez's constitutional rights were violated during the course of his arrest and processing that day before his arraignment.

The Court ordered an evidentiary hearing to resolve the dispute.  [Dkt. No. 147].  On October 19, 2011, the suppression nearing was held.  The following memorandum of decision identifies the conflicts between the parties and represents the Court's factual findings.  Based on the reasons set forth herein, the Defendant's motion is DENIED.

FACTUAL BACKGROUND

The following evidence was introduced in support of the motion to suppress and at the suppression hearing.  On October 19, 2009, a Drug Enforcement Agency taskforce executed a search warrant at the Defendant's home at 6:00AM.  Several law enforcement officers stationed themselves at the front and rear entrances of the Defendant's home, announced themselves as law enforcement officers, and directed the occupants to allow them entrance.  The Defendant instructed the officers to enter through the rear door and they opened that door for them to enter.  Once inside the apartment, law enforcement officers executed a warrant for Mr. Perez's arrest on a weapons charge.  Agent Catinazzo and Officer Logan remained in the living area of the apartment where Mr. Perez was detained in handcuffs while several other officers conducted a security sweep of the apartment.

Also present in the apartment were the Defendant's girlfriend and their 6 year old son.  The defendant's girlfriend was in the master bedroom dressing and their son was in a separate bedroom sleeping when the officers gained entry.  After the Defendant's girlfriend got dressed, she looked in on her son who was

still sleeping.  Then she entered the living area where the Defendant was being detained.  She testified that the apartment was very small and that during the time the officers were in the apartment conducting the security sweep of the three room apartment they were talking to each other.  Thereafter, she was instructed to get clothing for the Defendant, which she retrieved from the master bedroom.  While retrieving Mr. Perez's clothing, she was accompanied by a third officer.  That officer observed and inquired of her about a safe in a closet as they passed it on their way to the bedroom.  She and the officer engaged in a dialog about the safe before returning to the living area.  Law enforcement officers asked the defendant permission to search the apartment.  Mr. Perez refused stating "not without a warrant."  When he refused to authorize a search, he was transported to the Meriden police station.

The Defendant was one of several individuals for which the officers had a warrant.  There were several other arrestees at the station.  At the police station, Agent Nederika was responsible for coordinating their arraignments, including their legal representation and transportation from the precinct to the courthouse.  In facilitation of that process, he entered into the Defendant's cell.  At this point, the Defendant, without any provocation from the officer offered to cooperate by providing information to aid in the investigation and prosecution of others.  The Defendant acted in a secretive manner by whispering, holding his finger over his mouth and motioning for Officer Nederika to speak softly.

In addition to the testimony introduced at the suppression hearing, both the defendant and his girlfriend submitted affidavits dated June 24, 2011 in which

they described what transpired at their home.  Specifically, Mr. Perez claims that after opening the back door to let the agents in, he was told to get on the floor.  Def. Aff. June 24, 2011, ¶5.  After he obeyed this command, the defendant claims that the "agents picked [him] up and handcuffed [him] for a short period of time."  Id. ¶7.  Thereafter, Mr. Perez states that the "agents then began to ask [him] questions, such as, 'you know why we're here?'"  Id. ¶8.  After being permitted to get dressed (Id. ¶¶10-13), "one of the agents continued to try to interrogate" Mr. Perez.  Id. ¶13.  Mr. Perez affirms that his response was that he has "nothing to say."  Id. ¶14.  After this, the defendant claims he was put in a police vehicle and transported to the Meriden Police Department.  Id. ¶16.  His affidavit concludes, "Before arriving at the Meriden Police Department, I was not read my Miranda Rights."  Id. ¶16.  Mr. Perez's affidavit does not acknowledge that he made a statement.

Ms. Gosselin affirms many of the statements made by the defendant in his affidavit.  She asserts that, after she heard the defendant let the agents into their home, she got out of bed and "entered the kitchen and observed Victor standing handcuffed with law enforcement agents."  Gosselin Aff. June 24, 2011, ¶5.  She states that she saw "some agents . . . talking to Victor and one agent was asking me personal background information."  Id. ¶7.  She states that she "heard agents interrogate Victor."  Id. ¶12.  Her affidavit concludes, "From the time the agents entered our house and until the time they left our house, I did not hear any law enforcement officer read Victor his Miranda Rights."  Id. ¶16.  Ms. Gosselin does not state that she heard Mr. Perez make a statement or the nature of the

"interrogation" she heard. Her affidavit merely stated that one agent was talking to Perez while she was being asked and was presumably answering them. Her testimony and her affidavit establish that she was not present in the living area during much of the time Mr. Perez was detained, that she was attending to her attire, her son, the officer's inquiry about the safe in her bedroom closet and the collection of clothes for Mr. Perez. The evidence she offered also establishes that approximately 5 law enforcement officers were speaking to one another during the security sweep of the small three room apartment.

## DISCUSSION

Motions to Suppress are governed by Rule 12 of the Federal Rules of Criminal Procedure. The rule states that a motion to suppress must be made before trial. Fed. R.Crim. Pro. 12(b)(1)(C). Where the court resolves factual questions when ruling on a motion, the court must make specific factual findings on the record. U. S. v. Burbage 365 F.3d 1174 (C.A. 10th 2004) (holding that Rule 12(d) "does not require detailed findings of facts as long as the essential basis of the court's decision is apparent."). *See also* U.S. v. Williams, 951 F.2d 1287 (C.A.D.C. 1991); United States v. Prieto-Villa, 910 F.2d 601 (C.A. 9th 1990). Most relevant, however is the factual determination of conflicting testimony. Where, as here, "there is a direct conflict in testimony, it is crucial that the trial court summarize the evidence, identify factual conflicts and resolve them on the record." Burks v. State, 706 P.2d 1190, 1191 (Alaska App. 1985). The direct

conflict in the evidence presented in this case raises a question of whether the Defendant's statement was voluntary.

It is a long standing and fundamental principle that "a confession, in order to be admissible, must be free and voluntary." Bram v. United States, 168 U.S. 532, 542 (1897). A confession is voluntary when it was not "extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." Id. 542-43 (finding that during the course of investigating of a homicide aboard a ship a confession has been illegally coerced and improperly admitted against the defendant at trial. In remanding for a new trial; reminding that the conditions of arrest do not necessitate their inadmissibility). "Voluntariness is a question of fact to be determined from all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973). Where the voluntariness of a statement is challenged, the government bears the burden of establishing by a preponderance of the evidence that the defendant's statements were "truly the product of free choice." Colorado v. Connelly, 479 U.S. 157, 168-69 (1986). See also United States v. Ramirez, 79 F.3d 298 (2d Cir. 1996); United States v. Anderson, 929 F.2d 96 (2d Cir. 1991).

Assessment of whether an accused's confession was "voluntary" within the meaning of the Fifth Amendment begins with the initial question: "Is the confession the product of an essentially free and unconstrained choice by its maker?" Culombe v. Connecticut, 367 U.S. 568 (1961); Bram at 558 ("[T]he mere fact that the confession is made to a police officer, while the accused was under arrest in or out of prison, or was drawn out by his questions, does not

necessarily render the confession involuntary; but, as one of the circumstances, such imprisonment or interrogation may be taken into account in determining whether or not the statements of the prisoner were voluntary."); <u>United States v. Ferrara</u>, 377 F.2d 16, 17 (2d Cir. 1967) (quoting <u>Rogers v. Richmond</u>, 365 U.S. 534, 544, (1961)(internal quotations removed) ("[T]he test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear the defendant's will to resist and bring about confessions not freely self-determined.")).  Where statements are made during a conversation between a police officer and a defendant and the statements made by the officer are intended to trick and cajole a defendant into confessing, those statements are not "voluntary."  Although it has been held that trickery does not per se make voluntary waiver impossible, the government must still proffer evidence sufficient to show knowing and voluntary waiver by the defendant in spite of the circumstances.  <i>See</i> <u>Anderson</u> at 99.

In evaluating a claim by a defendant that statements were coerced and obtained involuntarily, therefore, a court must make three factual findings to determine whether a statement was voluntarily made: 1) the characteristics of the accused; 2) the conditions of the interrogation; and 3) the conduct of law enforcement.  <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218 (1973)

The first finding addresses the characteristics of the accused. As noted above, those characteristics include the defendant's experience, background, age, education, and intelligence.  <u>United States v. Guarno</u>, 819 F.2d 28 (2d Cir. 1987). The Court finds that the record establishes that the defendant

was able to understand and communicate effectively with the officers. The Defendant is a mature man and the father of a 7 year old child and newborn baby. The Probation Office reports that the he is gainfully self-employed in the home improvement and construction industry, is licensed by the State of Connecticut and earns a minimum $1,500 and 2,000 monthly, having completed a 40 hour Lead Abatement Supervisor course and Renovator Initial - English course. Supervision Status Update, March 31, 2011. He has a prior felony conviction and is therefore familiar with the legal and constitutional rights of an accused person. He further evinced his knowledge of his legal rights when he refused to allow law enforcement officers to search his apartment "without a warrant" and his right to be informed of the reason for the arrest. Further, the Defendant does not claim nor does the Court find that the defendant is of low intelligence. On the contrary, the court finds that the characteristics of the Defendant support an ultimate finding of voluntariness.

Second, the Court must analyze the conditions of the interrogation. <u>Mincey v. Arizona</u>, 437 U.S. 398 (1978). This includes the place where the interrogation was held, the length of detention, and the presence or absence of counsel. <u>Bram</u>, <u>Schneckloth</u>, <u>Miranda</u>. In this case, Mr. Perez was first detained in his own home for a short period of time. The second alleged interrogation occurred in the Meriden holding cell. The defendant's girlfriend testified that she picked Mr. Perez up from the District Court in Hartford later that day. The only evidence of his interrogation is the fact that he was asked background questions, asked if he knew why he was being arrested, told why he was being arrested in response to

his request for an explanation for his arrest, and processed for transport to court for his arraignment. The conditions of the interrogation do not support a finding on involuntariness, despite the fact that he was not represented by counsel at the time he made the statement.

Finally, the court must analyze the statement made within the context of the conduct of law enforcement officials. <u>Schneckloth</u>, <u>Bram</u>, <u>Brown v. Mississippi</u>, 297 U.S. 278 (1936). Specifically, the court must see if the defendant was forced to endure repeated or prolonged questioning and whether he was given information about his constitutional rights. <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981) (finding a coerced confession where a supervising agent forced the defendant to choose three times between having an attorney present and cooperating). There is no evidence that Mr. Perez was physically mistreated, restrained for a prolonged period, or physically deprived of food, sleep, water, or sanitary facilities of other human need. Nor is there any evidence that he was psychologically induced to speak through physical abuse, force, coercion, brainwashing, threats, promises of leniency or otherwise. There was no influence imposed upon Perez which would have overcome his will. The evidence does not support a finding on involuntariness on the basis of the conditions of Mr. Perez's detention, despite the fact that he was not represented by counsel at the time he made the statement.

On the contrary, the preponderance of the evidence establishes that the law enforcement officers treated Mr. Perez and his girlfriend courteously and respectfully. The Court further finds that Mr. Perez was read his constitutional

rights and that due to his girlfriend's absence from the room and attention to other matters it stands to reason she would not have heard the warning being given. Furthermore, the court finds that Mr. Perez knew his legal and constitutional right to remain silent. Finally, the Court finds that Mr. Perez's statement was totally voluntary and was the product of a knowing waiver of his constitutional right to remain silent. The Court can conceive that the statement was spontaneous and likely made without conscious regard to his known constitutional rights. However, Mr. Perez's impulsiveness was not the product of any disabling characteristic, condition of confinement or action of or omission by law enforcement officers.

In conclusion, the Court finds that the defendant's statement to law enforcement officials to the effect that, "I know why you're here, the AK, this is b***-s***, that snitch b******, it was not my gun, I was there, but I didn't sell it, I was there" (expletives deleted) was freely and voluntarily uttered within the meaning of the Fifth Amendment after he was advised of his <u>Miranda</u> warning. Therefore, the statements made by Mr. Perez will not be suppressed. For the foregoing reasons, the defendant's Motion to Suppress is DENIED.


IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut: October 28, 2011.